**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**

**CASE NO**.

GEORGE CAWTHON and
DAVID SIMPKINS,
on behalf of themselves and
all others similarly situated,                                                              **CLASS ACTION**

      Plaintiffs,                                                                                    **JURY TRIAL DEMANDED**

v.

BLUE CROSS BLUE SHIELD
OF FLORIDA, INC.,

      Defendant.
_____/

## CLASS ACTION COMPLAINT

      Plaintiffs, George Cawthon and David Simpkins ("Plaintiffs"), file this class action complaint on behalf of themselves and all others similarly situated against Defendant Blue Cross Blue Shield of Florida, Inc. (BCBS), and allege as follows:

## INTRODUCTION

      1.    This is a class action on behalf of BCBS policy holders whose approval of Proton Beam Radiation Therapy ("PBRT") was wrongfully delayed because of the common uniform application of an unlawful medical policy to initially deny, and unnecessarily delay, PBRT treatment to all policy holders claiming that the treatment is experimental, investigational, and not medically necessary despite PBRT being recognized as an established, medically appropriate treatment for various forms of cancer for decades.

2.      Instead of acting solely in the interests of the participants and beneficiaries of its health insurance plans, BCBS initially denies coverage for PBRT, as a cost-saving measure, in order to force Plaintiffs and the putative class members to seek alternative, suboptimal, treatment, because, on average, PBRT is more expensive than traditional Intensity Modulated Radiotherapy ("IMRT") or other treatments.

3.      Plaintiffs and other similarly-situated policy holders, and the medical professionals that treat them, are forced to spend a significant amount of time in appeals, and pleas, to BCBS to reverse its initial decision and approve the treatment.  Only after this unreasonable and unnecessary delay, and after Plaintiffs and other putative Class members have been forced to expend time and funds due to the delay, will BCBS admit that the PBRT is covered under its policies and finally approve the treatment.

4.      However, faced with what is, literally, a life or death decision as well as BCBS's uniform "denial and delay" policy, many beneficiaries or participants will give up on appealing the denial of PBRT treatment and proceed with the suboptimal treatments (in whole or in part).

5.      BCBS's unconscionable and uniform practice of denying and delaying PBRT coverage to policy holders with the intent that policyholders will give up and seek alternative, suboptimal, treatments is a breach of the members contracts, a violation of ERISA, and enriches, BCBS the cost of all or a portion of the PBRT treatment.

6.      This lawsuit is brought on behalf of Plaintiffs and other BCBS policyholders that had their PBRT treatment unreasonably and unnecessarily delayed and suffered damages as a result. This action also seeks to disgorge BCBS of the funds it has saved in delaying treatment to policyholders. Plaintiffs, on behalf of the putative Class members, further seek declaratory and injunctive relief to halt BCBS's uniform practice of delaying PBRT treatment to policyholders.

11X4871

## THE PARTIES

### Plaintiff David Simpkins

7.      David Simpkins is a citizen of Florida who resides in St. Augustine, Florida, and otherwise *sui juris*.

8.      Mr. Simpkins works as an Assistant Principal at Pedro Menendez High School and is a BCBS policyholder with a self-funded insurance plan through his employer, St. John's County, Florida.

### Plaintiff George Cawthon

9.      Plaintiff George Cawthon is a citizen of Florida who resides in Gainesville, Florida, and otherwise *sui juris*.

10.      Mr. Cawthon is retired and a BCBS policyholder through a Medicare Advantage plan.

### Defendant Blue Cross Blue Shield of Florida (BCBS)

11.      Defendant BCBS is a Florida corporation with its principal place of business in Jacksonville, Florida. BCBS contracts with employers to provide health insurance plans to employees and also provides insurance plans to people by providing Medicare Advantage plans. At all relevant times, BCBS provided and/or controlled the insurance plans of Plaintiffs and the putative Class members.

## JURISDICTION AND VENUE

12.      BCBS is engaged in the business of offering health insurance to individuals and employers in Florida, and offers plans including a health maintenance organization, a preferred provider organization, and indemnity products to the Florida public.

3

11X4871

13.     BCBS offers multiple products in the State of Florida, including employer-sponsored health care plans and Medicare Advantage health care plans.

14.     BCBS's actions in administering employer-sponsored health care plans, making coverage and benefit determinations under the terms and conditions of the health care plans, and/or processing appeals of coverage and benefit determinations under the terms and conditions of the health care plans are governed by the Employee Retirement Income Security Act (ERISA).

15.     BCBS's actions in administering Medicare Advantage plans, making coverage and benefit determinations under the terms and conditions of the health care plans, and/or processing appeals of coverage and benefit determinations under the terms and conditions of the health care plans are governed by the federal Medicare Act.

16.     This Court has jurisdiction of this case under 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 1132(e) (ERISA).

17.     This Court has personal jurisdiction over BCBS because BCBS is a Florida Not for Profit corporation with its principal place of business in Jacksonville, Florida. The Court further has personal jurisdiction pursuant to § 48.193(1), Florida Statutes, because BCBS has operated, conducted, engaged in, and carried on a business in Florida and has an office in Florida. BCBS is also subject to personal jurisdiction pursuant to § 48.193(4), Florida Statutes, because it contracted to insure Plaintiff within Florida at the time of contracting.

18.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) and 1391(d), because a substantial part of the events or omissions giving rise to Plaintiffs' and Class members' claims occurred in this judicial district.

11X4871

## FACTUAL ALLEGATIONS

**A.      BCBS Acts as a Fiduciary for Plaintiff Simpkins and the Employee Plan Class Members.**

19.     The majority of the health plans underwritten and/or administered by BCBS are employee welfare benefit plans sponsored by private-sector employers governed by ERISA ("ERISA plans").

20.     During all relevant times, BCBS acted as a fiduciary with respect to its administration of ERISA plans. In particular, BCBS interpreted and applied ERISA plan terms, made coverage and benefit decisions under the ERISA plans within its sole discretion, and provided payment under the ERISA plans to participants/beneficiaries and their providers. Accordingly, BCBS was required to comply with the requirements ERISA imposes on fiduciaries.

21.     The health insurance plans administered by BCBS are either fully insured or self-funded. With respect to fully insured plans, BCBS both administers the plan by making all benefit determinations and pays the benefits out of its own assets. With respect to self-funded plans, BCBS administers the plan, but the underlying plan sponsor or employer through which the insurance is provided is ultimately responsible for reimbursing BCBS for the benefit payments.

22.     When processing benefits for a self-funded plan (as in the case of Plaintiff Simpkins), BCBS makes all benefit determinations and authorizes benefit checks to be issued out of bank accounts that BCBS controls.  Periodically, BCBS will notify the sponsors of the self-funded plans of the need to replenish their accounts so that benefits can be paid. But BCBS nevertheless continues to control these accounts and is fully responsible for processing the insurance claims and making the determination whether to issue the check from these accounts.

23.     Thus, irrespective of whether a particular ERISA plan is fully insured or self-funded, BCBS is the proper defendant for Plaintiff Simpkins, and the putative Employee Plan sub-

11X4871

Class, to sue because BCBS—not the underlying plan sponsor or employer—made all the relevant decisions and wielded the authority to issue benefit checks under the ERISA plans.

>   **B.    BCBS Administers the Medicare Advantage Plans for Plaintiff Cawthon and Medicare Advantage Plan Class Members.**

24.    Congress enacted the Medicare Advantage Program (also known as Medicare Part C). 42 U.S.C. § 1395w–21 *et seq.*

25.    Under the Medicare Advantage program, a private insurance company, such as BCBS, operating as a Medicare Advantage Organization ("MAO"), administers the provision of Medicare benefits pursuant to a contract with the Centers for Medicare and Medicaid Services ("CMS"). CMS pays the MAO a fixed fee per patient, and the MAO provides at least the same benefits as a patient would receive under traditional Medicare.

26.    Organizations that offer Medicare Advantage plans must comply with the CMS national coverage determinations and general coverage guidelines included in original Medicare manuals and instructions. 42 C.F.R. § 422.101(b)(1-2).

27.    Specifically, MAOs must "provide coverage of, by furnishing, arranging for, or making payment for, all services that are covered by Part A and Part B of Medicare …. that are available to beneficiaries residing in the plan's service area." 42 C.F.R. § 422.101(a).

28.    BCBS has entered into member contracts with Plaintiff Cawthon and members of the Class he seeks to represent.  These contracts contain the same material provisions including the requirement that BCBS cover all treatments that are medically necessary.

29.    BCBS does not apply the term "medically necessary" in accordance with Medicare guidelines as required. Thus, the term is ambiguous to consumers because it is not applied uniformly to all Medicare Advantage policy holders.

11X4871

30. When processing benefits for a Medicare Advantage plan (as in the case of George Cawthon), BCBS makes all benefit determinations and authorizes benefit checks to be issued out of BCBS bank accounts.

31. BCBS is solely responsible for processing the insurance claims, approving, denying, or delaying benefits and making the determination whether to issue the check from these accounts.

**C.     Proton Beam Radiation Therapy**

32. PBRT is a procedure that uses protons to deliver a curative radiation dose to a tumor, while reducing doses to healthy tissues and organs, which results in fewer complications and side effects than traditional IMRT.

33. With PBRT, protons deposit their energy over a very small area called the "Bragg peak." The Bragg peak can be used to target high doses of proton beams to a tumor, while doing less damage to normal tissues in front of and behind the tumor. Proton beams enable patients to tolerate higher total doses of radiotherapy compared with photons, which are used for traditional IMRT.

34. PBRT has been recognized for decades by the medical community as an established, medically appropriate treatment for cancer, including throat and prostate cancer. The first hospital-based proton-beam center in the United States was at the Loma Linda University Medical Center, which began operation in 1990.

35. There is overwhelming evidence that PBRT is safe and effective and is a generally accepted standard of medical practice for the treatment of cancer within the medical community.

36. PBRT has been around and well-accepted for over 30 years. The Food and Drug Administration ("FDA") approved PBRT for treatment of cancer in 1988; the National Association

11X4871

for Proton Therapy, Alliance for Proton Therapy and other nationally-recognized medical organizations, and numerous meticulous peer-reviewed studies have validated the safety and effectiveness of PBRT.

37.     Notably, traditional Medicare plans administered by the federal government have approved PBRT for the treatment of various types of cancer.

38.     Additionally, many respected cancer facilities and providers, including the University of Florida, Baptist Hospital's Miami Cancer Institute, MD Anderson Cancer Center, Loma Linda University, Harvard Medical School/Massachusetts General Hospital, University of Maryland, Northwestern University, Mayo Clinic, Emory University, Case Western Reserve University, Washington University in St. Louis, University of Washington, New York Proton Center, and the Texas Center for Proton Therapy recommend and use PBRT on a regular basis.[1]

**D.     BCBS's Proton Beam Radiation Therapy Policy ("BCBS PBRT Policy").**

39.     Whether BCBS has deemed the use of PBRT for certain forms of cancer as "medically necessary" or still considers it "experimental" or "investigational" for other forms of cancer, it has established a common uniform policy as to all participants or beneficiaries to deny or delay the treatment of PBRT, and force people to seek the suboptimal treatments and thereby attempt to save itself the cost of the PBRT treatment.

40.     Further, per the BCBS PBRT Policy, BCBS at times performs a "Comparative Effectiveness Analysis" to find an alternative service, after the PBRT treatment has already been determined to be medically necessary, in order to cut costs to the detriment of the patient.

41.     Under either the Medicare Advantage or the employer-sponsored plans, the fact that a physician has prescribed, recommended, or approved PBRT for any given patient is not a

---

[1] In 2018, the University of Miami announced its intention to build a PBRT center at its Sylvester Comprehensive Cancer Center.

11X4871

significant factor in BCBS's analysis of whether the treatment is medically necessary.  BCBS's policy places the most importance on the cost of the treatment and ultimately its own profits.

42.    For example, when determining whether PBRT is medically necessary in any case (even when the patient's physician has recommended it), BCBS will perform the Comparative Effective Analysis where BCBS compares the cost of PBRT to other forms of treatment, when it knows that its Comparative Effective Analysis will most likely result in an initial denial and delay of the PBRT treatment because PBRT is, on average, more expensive than the other suboptimal treatments for cancer.

43.    BCBS's policy to deny or delay PBRT is intended to compel policyholders to cease any efforts to receive PBRT treatment, even though it has been recommended by their physicians as the proper treatment for their cancer, and instead opt for other cheaper and suboptimal forms of treatment and thereby save BCBS the cost of PBRT.

44.    Policyholders must spend weeks and often months of their time, and expend significant funds, in appeals to BCBS to have the PBRT treatment approved and will often have to opt for a cheaper alternative treatment while BCBS delays the PBRT.

45.    BCBS's policy to deny and delay PBRT treatment to all its policyholders – whether through an ERISA plan or a Medicare Advantage plan – damages Plaintiffs in the form of funds expended and the time for delay and enriches BCBS by saving it the cost of PBRT treatments.

## PLAINTIFFS' ALLEGATIONS

### A.    David Simpkins

46.    Plaintiff Simpkins is a beneficiary in a health insurance plan issued on behalf of his employer (the "Employer Plan"), which is a group health benefit plan. Plaintiff Simpkins started

11X4871

in his health plan in 1998. The Employer Plan is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*., and is administered by BCBS.

47.     Plaintiff Simpkins was diagnosed with throat cancer in July 2018. Shortly thereafter, Plaintiff consulted with physicians at Ackerman Cancer Center ("Ackerman"), including Dr. Scot Ackerman. The physicians at Ackerman recommended that Plaintiff Simpkins undergo PBRT in addition to IMRT because, among other things, the likelihood of achieving a better outcome and reducing damage to other organs was greater for PBRT.

48.     Plaintiff Simpkins physicians recommended that the best course of action to treat Plaintiff Simpkins' throat cancer was for him to undergo twenty treatments of IMRT and fifteen treatments of PBRT.

49.     On August 1, 2018, BCBS denied Plaintiff Simpkins' request for pre-authorization of PBRT on the grounds that PBRT is experimental or investigational and that there is not enough medical evidence to show that PBRT results in better long-term health outcomes for people when PBRT is done along with IMRT (intensity-modulated radiation therapy).

50.     BCBS informed Mr. Simpkins that his denial was based on BCBS's medical coverage guideline.

51.     Plaintiff Simpkins appealed the denial on August 9, 2018, on the grounds that his doctor recommended PBRT therapy for treatment of his throat cancer and that PBRT for treatment of head and neck cancer has been deemed by the National Comprehensive Cancer Network (NCCN) national guidelines to be neither experimental nor investigational.

52.     Plaintiff Simpkins physician, Dr. Ackerman, supported his appeal of BCBS's denial of the PBRT treatment and contacted BCBS numerous times to contest the denial of PBRT treatment.

11X4871

53.     Due to the life-threatening nature of allowing the cancer to go untreated while BCBS continued to deny and delay the treatment, Plaintiff Simpkins' physicians began treating Plaintiff with the IMRT.

54.     On August 29, 2018, after Simpkins' and his physician's numerous calls and appeal, BCBS sent correspondence to Mr. Simpkins indicating that it had reversed its decision and approved PBRT treatment for Plaintiff Simpkins.

55.     Because of the delay in approval and the need to begin treatment, Plaintiff Simpkins ultimately received less treatments of PBRT (ten) and more treatments of IMRT (twenty-five) than initially recommended by his physicians.

56.     Plaintiff Simpkins' cancer is in remission; however, Plaintiff Simpkins is unaware if the cancer will re-occur and if he will need treatment in the future and Mr. Simpkins continues to experience side effects of the radiation including difficulties swallowing certain foods and ear pain.

57.     BCBS's unnecessary and disingenuous initial denial and resulting delay in PBRT treatment unjustly enriched BCBS by the difference in the five less PBRT treatment costs administered to Plaintiff Simpkins.

58.     BCBS's PBRT Policy of unreasonable delay or denial of PBRT coverage for Plaintiff Simpkins and members of the Class he seeks to represent (as defined below) violated the terms of the relevant plans and BCBS's fiduciary obligations under ERISA.

59.     Under ERISA, Plaintiff Simpkins and ERISA sub-Class members are entitled to damages as well as equitable and declaratory relief enjoining the application of any BCBS PBRT Policy that initially denies and seeks to delay PBRT treatment and declaring that BCBS's PBRT Policy is a breach of its fiduciary duty and awarding such other relief the Court finds appropriate.

11

11X4871

**1. BCBS's ERISA Violations as to Plaintiff Simpkins and the Class He Represents.**

60.     As the claims administrator responsible for interpreting and administering the Employer Plan and similar BCBS plans issued nationwide, and vested with responsibility for making final benefit determinations, BCBS is an ERISA fiduciary.

61.     As an ERISA fiduciary, BCBS was required to discharge its duties consistent with 29 U.S.C. § 1104, which requires (among other things) that it do so "solely in the interest of the participants and beneficiaries" and for the "exclusive purpose" of "providing benefits to participants and their beneficiaries" and paying reasonable expenses of administering the plan. It must do so with the "care, skill, prudence, and diligence" and in accordance with the terms of the plans it administers. BCBS violated all of these requirements.

62.     BCBS violated these duties when it prepared and promulgated the BCBS PBRT Policy to wrongfully deny and delay PBRT treatment for the purposes of pushing policyholders to choose alternative, cheaper, treatments and thereby saving BCBS the cost of the PBRT. BCBS relied upon outdated evidence, ignored evidence indicating that PBRT was not experimental, and unreasonably concluded that PBRT was "experimental or investigational." BCBS's breach of its duties is in contravention of the terms of Plaintiff Simpkins' and ERISA Class members' BCBS plans.

63.     In violating its fiduciary duties, BCBS elevated its own interests above the interests of plan participants and beneficiaries, reflecting its conflict of interest when determining whether to cover PBRT. By promulgating and applying the BCBS PBRT Policy, BCBS sacrificed the interests of insureds like Plaintiff Simpkins and the Class so that it could artificially decrease the number and value of PBRT treatments it was required to pay from its own assets (i.e., with respect to fully insured plans and self-funded plans with stop-loss provisions requiring BCBS to cover

11X4871

benefits above a certain threshold) and the assets of its employer-sponsor customers (i.e., with respect to other self-funded plans); moreover, by prioritizing the assets of its employer-sponsor customers, BCBS also advanced its own interests in retaining and expanding its business with such customers.

**B.    Plaintiff George Cawthon**

64.    Plaintiff Cawthon took out a Medicare Advantage health insurance policy in or about January 2017.  Medicare Advantage plans are run by private insurers, such as BCBS, who take on the obligations and duties of traditional Medicare and are required to cover treatments in the same manner as the federal government Medicare plans.  In fact, Plaintiff Cawthon had inquired about whether the Medicare Advantage plan covered PBRT and was told by the agent that it did.

65.    Plaintiff Cawthon was diagnosed with prostate cancer in October 2018. In November 2019, Plaintiff Cawthon consulted with physicians at the University of Florida Proton Therapy Institute including, Dr. William Mendenhall.  After Plaintiff Cawthon underwent some testing, Dr. Mendenhall prescribed PBRT as the recommended treatment and, among other things, found it to be "therapeutically optimal" and "medically necessary."

66.    Per BCBS's standard policy of delay and deny, Plaintiff Cawthon's request for pre-authorization of the PBRT was denied on February 6, 2019.  Despite PBRT being approved for treatment of prostate cancer in standard Medicare plans and despite the treatment being prescribed by his physicians, BCBS explained its denial of the PBRT by stating: "We have not been told that PBRT is called for. For this reason, this treatment is not medically necessary for you."

67.    Plaintiff Cawthon and his physicians appealed the denial of his claim for pre-authorization. Plaintiff Cawthon and the UF Proton Therapy Institute spent weeks calling BCBS

11X4871

to contest the decision.  The doctors at the UF Proton Therapy Institute held a peer-to-peer call with medical advisors for BCBS to help with appealing the denial of the PBRT treatment. At the recommendation of the UF Proton Therapy Institute, Plaintiff Cawthon even requested that a Case Manager from BCBS be assigned to his case but then spent several weeks trying to get one to return his calls.

68.    On, February 7, 2019, Dr. Mendenhall, also sent a Letter of Medical Necessity to BCBS that described Plaintiff Cawthon's prostate cancer diagnosis and explained why PBRT was the proper treatment.  Dr. Mendenhall also reminded BCBS that "proton therapy is approved by Medicare as an option for men with localized prostate cancer."

69.    On February 16, 2019, in keeping with their uniform policy to deny and delay claims, BCBS again denied Plaintiff Cawthon's appeal stating simply that "our first decision to deny coverage for [PBRT] was right."

70.    Plaintiff Cawthon's appeal was then sent to MAXIMUS Federal Services[2] the organization that reviews Medicare appeal denials. MAXIMUS upheld the denial of the appeal and stated that PBRT was not medically necessary for Plaintiff Cawthon.

71.    Plaintiff Cawthon ultimately took his appeal to the Office of Medicare Hearings and Appeal (OMHA) and a telephonic administrative hearing was held on March 21, 2019.

72.    Realizing that Cawthon would not simply "give up" and seek an alternative, insufficient, cheaper treatment, BCBS appeared at the hearing and conceded that the PBRT "should be coverable and payable by the plan."

73.    Plaintiff Cawthon's cancer is in remission; however, Plaintiff Cawthon is unaware if the cancer will re-occur and if he will need treatment in the future.

---

[2] MAXIMUS Federal is a publicly traded company used by CMS to assist with Medicare and Medicare Advantage claims denials.

11X4871

74.     BCBS's unnecessary and disingenuous initial denial and resulting delay in PBRT treatment unjustly enriched BCBS and caused damage, as well as mental anguish, to Plaintiff Cawthon.

75.     BCBS's PBRT Policy of unreasonable delay or denial of PBRT coverage breached its contracts with Plaintiff Cawthon and members of the Medicare Advantage Class he seeks to represent (as defined below).

76.     Plaintiff Cawthon and Medicare Advantage sub-Class members are entitled to damages as well as equitable and declaratory relief enjoining the application of any BCBS PBRT Policy that initially denies and seeks to delay PBRT treatment and declaring that BCBS's PBRT Policy is a breach of its contract and awarding such other relief the Court finds appropriate.

77.     All conditions precedent to this action have been performed or waived.

## CLASS ACTION ALLEGATIONS

78.     Plaintiffs bring this class action and seek to certify and maintain it as a class action under Rules 23(a) and (b)(1), (b)(2), or (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and the following proposed Florida subclasses:

**A.     Class Definitions**

79.     Plaintiff Simpkins brings his claims on his own behalf and on behalf of a Florida "**ERISA Class**," defined as:

> All participants or beneficiaries in ERISA Plans underwritten or administered by BCBS who, based on the application of the BCBS PBRT Policy were delayed in receiving health insurance coverage for Proton Beam Radiation Therapy to treat their cancer.

80.     Plaintiff Cawthon brings his claims on his own behalf and on behalf of a Florida "**Medicare Advantage Class**," defined as:

11X4871

> All participants or beneficiaries in Medicare Advantage Plans underwritten or administered by BCBS who, based on the application of the BCBS PBRT Policy were delayed in receiving health insurance coverage for Proton Beam Radiation Therapy to treat their cancer.

81.     Excluded from each class are Defendant, its employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

82.     Plaintiffs reserve the right to modify, expand, or amend the definitions of the proposed Classes following the discovery period and before the Court determines whether class certification is appropriate.

83.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

**B.      Numerosity**

84.     The members of each Class are so numerous that joinder of all members is impractical.

85.     While the precise number of members in each Class is known only to BCBS, it has issued policies providing coverage to thousands of patients, under employer-sponsored ERISA or Medicare Advantage plans in the State of Florida; and PBRT has become so widespread that at a minimum, requests for coverage of this therapy numbering in the hundreds, if not thousands, must have been submitted to and initially denied and delayed by BCBS.

86.     The Classes are ascertainable because the members can be readily identified using BCBS's claims data. PBRT therapy is described with a discrete set of procedure codes under the Current Procedural Terminology ("CPT") promulgated by the American Medical Association.

16

11X4871

Accordingly, Class members can be readily and objectively ascertained through use of records maintained by BCBS.

87.     Finally, Class members are dispersed geographically throughout the United States such that joinder of all members is impracticable.

**C.     Commonality**

88.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because questions of law and fact that have common answers predominate over questions affecting only individual Class members. These include, without limitation:

a.     Whether PBRT therapy is an "experimental or investigational" service or treatment;

b.     Whether BCBS acted as an ERISA fiduciary when it created or developed the BCBS PBRT Policy;

c.     Whether BCBS categorically applied the BCBS PBRT Policy to initially deny and delay coverage to Class members;

d.     Whether Class members' claim denials and subsequent delays were based in whole or in part on the BCBS PBRT Policy;

e.     Whether the creation or development of the BCBS PBRT Policy constituted a violation of ERISA;

f.     Whether BCBS's application of the BCBS PBRT Policy constituted a violation of ERISA;

g.     Whether the creation or development of the BCBS PBRT Policy constituted a breach of its contracts with the Medicare Advantage Class;

h.     Whether BCBS's application of the BCBS PBRT Policy constituted a breach of its contracts with the Medicare Advantage Class;

17

11X4871

i.      Whether BCBS was unjustly enriched by denying and delaying treatment to the Plaintiffs and the Class members;

j.      Whether Plaintiffs and the Class members suffered damages by the delay in their treatment; and

k.      Whether PBRT Class members are entitled to the relief sought if Plaintiff establishes liability.

### D.      Typicality

89.      This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiffs' claims are typical of the claims of each of the Class members, as all Class members were and are similarly affected and their claims arise from the same wrongful conduct of BCBS. Each Class member submitted a claim for coverage of PBRT for treatment of cancer, and, like other PBRT Class members, BCBS initially denied the claim based on the BCBS PBRT Policy to delay treatment in all cases and force Class members to seek alternative, cheaper treatments.  As a result, BCBS has been unjustly enriched and Plaintiffs and the putative Class members have sustained, and will continue to sustain, damages. The relief Plaintiffs seek in this action is typical of the relief sought for the absent Class members.  Plaintiffs' claims are typical of the claims of the members of each Class because Plaintiff Simpkins is a beneficiary of an ERISA Plan administered by BCBS and Plaintiff Cawthon is a BCBS Medicare Advantage policyholder.

### E.      Adequacy of Representation

90.      Plaintiffs will fairly and adequately protect the interests of the Classes.  Plaintiffs' interests do not conflict with the interests of the members of each Class. Further, Plaintiffs have retained counsel who are competent and. experienced in complex class action litigation, and Plaintiffs and their counsel intend to prosecute this action vigorously on behalf of the Class

18

11X4871

members and have the financial resources to do so. Neither Plaintiff nor their counsel has any interest adverse to those of the Class members.

### F.    Predominance/Superiority

91.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Questions of law and fact common to the Class members predominate over any questions affecting only individual members.

92.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable, Further, because the damages Class members suffered by the delay in treatment are small relative to the expense and burden of individual litigation, it would be impossible for the members of the Class to redress individually the harm done to them, such that most or all Class members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

93.    In comparison to piecemeal litigation, class action litigation presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member. The benefits to the legitimate interests of the parties, the court, and the public resulting from class action litigation substantially outweigh the expenses, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation. Class adjudication is superior to other alternatives under Fed. R. Civ. P. 23(b)(3)(D).

11X4871

94.    Plaintiffs are unaware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with the authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges.

**G.    Fed. R. Civ. P. 23(b)(1)**

95.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications that could establish incompatible standards of conduct for BCBS.

**H.    Fed. R. Civ. P. 23(b)(2)**

96.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because by applying a uniform policy to delay the PBRT treatment and force policyholders into cheaper treatments, BCBS has acted and refused to act on grounds that apply generally to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct towards Class members, and making final injunctive relief or corresponding declaratory relief appropriate respecting the proposed Class as a whole.

97.    The Court may, on motion of Plaintiffs or on its own determination, certify statewide classes for claims sharing common legal questions; utilize the provisions of Fed. R. Civ. P. 23(c)(4) to certify particular claims, issues, or common questions of law or of fact for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Fed. R. Civ. P. 23(c)(5) to divide any Class into subclasses.

## COUNT I

### UNJUST ENRICHMENT
### On Behalf of Plaintiffs and Each Class

98.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 97 as though

11X4871

fully set forth herein.

99.     Plaintiffs bring this claim on behalf of all Class members under the Florida common law of unjust enrichment.[3]

100.    BCBS collects a full premium payment in exchange for providing a full scope of coverage.

101.    As a result, BCBS has received and retained a benefit from the Plaintiffs and Class members and inequity has resulted.

102.    Plaintiffs and the Class members directly conferred benefits on BCBS by paying their full premiums in exchange for a full scope of coverage, and by seeking suboptimal, cheaper treatment when BCBS initially denied and delayed approval for PBRT,  thereby saving BCBS the cost of the more expensive, and more effective, PBRT treatments.  BCBS was further enriched by the amount in investment income it received by retaining the funds to pay for the PBRT for a longer period of time due its policy to initially deny and delay treatment.

103.    It is inequitable for BCBS to retain these benefits. BCBS will be unjustly enriched if it is allowed to retain the aforementioned benefits, and each Class member is entitled to recover the amount by which BCBS was unjustly enriched at his or her expense.

104.    Plaintiffs do not have an adequate remedy at law.

105.    The amount of BCBS's unjust enrichment should be disgorged, in an amount to be proven at trial.

106.    Plaintiffs, on behalf of themselves and all similarly situated Class members, seek an award against BCBS in the amount by which it has been unjustly enriched at Plaintiffs' and the Class members' expense, and such other relief as this Court deems just and proper.

---

[3] Plaintiff Cawthon brings this claim in the alternative to his breach of contract claims.

21

## COUNT II

**IMPLIED-IN-LAW CONTRACT**
**On Behalf of Plaintiffs and Each Class**

107.     Plaintiffs incorporates by reference paragraphs 1 through 97 as if fully stated herein.

108.     BCBS has an obligation to arrange for the provision of medically necessary covered services to its members.

109.     Plaintiffs and the Class members have been paying premiums to BCBS in exchange for inclusion in BCBS' health plans and thus conferred benefits on BCBS by paying these amounts in exchange for health insurance coverage.

110.     In exchange for these premiums, BCBS is required and obligated to offer health insurance coverage and cover medically necessary services.

111.     Plaintiffs' and the Class members' respective physicians deemed the PBRT treatment as medically necessary for Plaintiffs medical conditions. BCBS had knowledge of this and had knowledge of the benefits of receiving premiums from Plaintiffs and the Class members (while denying and delaying the authorization for the PBRT treatment), and voluntarily accepted or retained the benefits.

112.     Plaintiffs and the Class members directly conferred benefits on BCBS by seeking suboptimal, cheaper treatment when BCBS initially denied and delayed approval for PBRT, thereby saving BCBS the cost of the more expensive, and more effective, PBRT treatments.

113.     The circumstances are such that it would be inequitable for BCBS to retain the benefit of initially denying and delaying PBRT treatment to Plaintiffs and the Class members.

114.     Plaintiffs and Class members seek the relief identified below to remedy this claim.

11X4871

## COUNT III

**VIOLATION OF FIDUCIARY OBLIGATIONS UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY PROGRAM'S ("ERISA"), 29 U.S.C. § 1001, *et seq*., On Behalf of Plaintiff Simpkins and the ERISA Class**

115.    Plaintiff Simpkins incorporates by reference paragraphs 1 through 97 as if fully stated herein.

116.    This count is brought pursuant to 29 U.S.C. § 1132(a)(1)(B).

117.    As the entity responsible for making medical benefit determinations under the ERISA Plan and responsible for developing internal practices and policies to facilitate such determinations, BCBS is an ERISA fiduciary.

118.    As an ERISA fiduciary, and pursuant to 29 U.S.C. § 1104(a), BCBS is required to discharge its duties "solely in the interests of the participants and beneficiaries" and for the "exclusive purpose of providing benefits to participants and their beneficiaries" and paying "reasonable expenses of administering the plan." BCBS must do so with reasonable "care, skill, prudence, and diligence" and in accordance with the terms of the plans it administers. BCBS must conform its conduct to a fiduciary duty of loyalty and may not make misrepresentations to its insureds.

119.    BCBS violated these duties by adopting and implementing a policy to initially deny and continue to delay coverage for PBRT based on the purported exclusions under its plans, when such a finding was contrary to generally accepted practices and to the terms of the plans.

120.    In doing so, BCBS did not act "solely in the interests of the participants and beneficiaries" for the "exclusive purpose" of "providing benefits." BCBS did not utilize the "care, skill, prudence, and diligence" of a "prudent man" acting in a similar capacity. BCBS did not act in accordance with the terms of the ERISA Plan and other BCBS plans.

11X4871

121.    Instead, BCBS elevated its own interests and those of its corporate affiliates above the interests of plan participants and beneficiaries. By adhering to an incorrect and outdated policy with regard to PBRT, BCBS artificially decreased the number and value of covered claims thereby benefiting its corporate affiliates at the expense of insureds.

122.    The cost to administer PBRT far exceeds the cost for traditional IMRT or other treatments for the same condition; the cost for PBRT can be double that of traditional IMRT.

123.    BCBS did not act "solely in the interests of the participants and beneficiaries" when it denied and delayed coverage for PBRT. Rather, upon information and belief, BCBS denied coverage for PBRT to treat cancer due to its average higher cost with the intent of forcing beneficiaries to opt for cheaper alternative treatments.

124.    Plaintiff Simpkins and ERISA Class members have been harmed by breaches of fiduciary duty of BCBS because their claims have been improperly denied and delayed when it has conceded that PBRT is actually "covered and payable by the plan."

125.    Plaintiffs and Class members seek the relief identified below to remedy this claim.

## COUNT IV

**IMPROPER DENIAL AND DELAY OF BENEFITS UNDER
ERISA, 29 U.S.C. § 1001, *et seq*.,
On Behalf of Plaintiff Simpkins and the ERISA Class**

126.    Plaintiff Simpkins incorporates by reference paragraphs 1 through 97 as if fully stated herein.

127.    This count is brought pursuant to 29 U.S.C. § 1132(a)(1)(B).

128.    BCBS denied and delayed the insurance claims for PBRT submitted by Plaintiff and other ERISA Class members in violation of the terms of Simpkins' and the ERISA Class members' BCBS plans. BCBS denied these claims in order to force Plaintiff Simpkins and the

24

11X4871

ERISA Class members to opt for cheaper treatments and thereby save BCBS the cost of the more expensive PBRT treatment.

129.    After their improper denial and delay of treatment, BCBS then provided untimely approval of the medically necessary PBRT treatment.

130.    Plaintiff and the ERISA Class members have been harmed by BCBS' improper benefit denials and delays in the form of the time spent to obtain the treatment and because they were deprived of insurance benefits they were owed.

131.    Plaintiff and the ERISA Class members seek the relief identified below to remedy this claim.

## COUNT V

**CLAIM FOR INJUNCTIVE RELIEF UNDER ERISA, 29 U.S.C. § 1001, *et seq***
**On Behalf of Plaintiff Simpkins and the ERISA Class**

132.    Plaintiff Simpkins incorporates by reference paragraphs 1 through 97 as if fully stated herein.

133.    This count is brought pursuant to 29 U.S.C. § 1132(a)(3)(A) only to the extent that the Court finds that the injunctive relief sought to remedy Counts II and/or III are unavailable pursuant to 29 U.S.C, § 1132(a)(1)(B).   Plaintiff and the ERISA Class have been harmed by BCBS's breaches of fiduciary duty described above.

134.    In order to remedy these harms, Plaintiff and the ERISA Class members are entitled to enjoin these acts and practices pursuant to 29 U.S.C. § 1132(a)(3)(A).

11X4871

<u>**COUNT VI**</u>

**CLAIM FOR OTHER APPROPRIATE EQUITABLE RELIEF UNDER
ERISA, 29 U.S.C. § 1001, *et seq*
<u>On Behalf of Plaintiff Simpkins and the ERISA Class</u>**

135.    Plaintiff Simpkins incorporates by reference paragraphs 1 through 97 as if fully stated herein.

136.    This count is brought pursuant to 29 U.S.C. § 1132(a)(3)(B) only to the extent that the Court finds that the equitable relief sought to remedy Counts II and III are unavailable pursuant to 29 U.S.C. § 1132(a)(1)(B).

137.    Plaintiff Simpkins and the ERISA Class have been harmed by BCBS's breaches of fiduciary duty described above.

138.    Additionally, by engaging in this misconduct, BCBS was unjustly enriched in two ways: first, it saved the cost paying benefits for all recommended PBRT treatments by delaying and forcing beneficiaries to seek alternative cheaper treatments; second, with regard to self-funded plans, BCBS charged its corporate customers fees for serving as claims administrator while improperly denying PBRT benefits based on the false claim that the treatments were not medically necessary and also lowered costs for its corporate customers, allowing BCBS to retain current customers and expand its business to new customers.

139.    In order to remedy these harms, Plaintiff Simpkins and the ERISA Class are entitled to appropriate equitable relief, including an appropriate monetary award based on restitution, disgorgement or surcharge, pursuant to 29 U.S.C. § 1132(a)(3)(B).

11X4871

## COUNT VII

### BREACH OF CONTRACT - IMPROPER DENIAL AND DELAY OF BENEFITS
### On behalf of Plaintiff Cawthon and the Medicare Advantage Class Members

140.    Plaintiff Cawthon incorporates by reference paragraphs 1 through 97 as if fully stated herein.

141.    Plaintiff Cawthon and the Medicare Advantage Class members negotiated and contracted with BCBS for specific health coverage.

142.    Plaintiff Cawthon and the Medicare Advantage Class members made all insurance premium payments, meeting all requirements of the Plaintiff and Medicare Advantage Class members under the contract.

143.    BCBS denied and delayed the insurance claims for PBRT submitted by Plaintiff and the Medicare Advantage Class members in violation of the terms of Plaintiff Cawthon's and the Medicare Advantage Class members' BCBS plans. BCBS denied these claims in order to force Plaintiff Cawthon and the Medicare Advantage Class members to opt for suboptimal treatments and thereby save BCBS the cost of the more expensive and more effective PBRT treatment.

144.    After their improper denial and delay of treatment, BCBS then provided untimely approval of the medically necessary PBRT treatment.

145.    Plaintiff Cawthon and the Medicare Advantage Class members have been harmed by BCBS's improper benefit denials and delays in the form of the time spent and funds expended to obtain the treatment and because they were deprived of insurance benefits they were owed.

146.    Plaintiff Cawthon and the Medicare Advantage Class members seek the relief identified below to remedy this claim.

11X4871

147.     During the relevant time period, there existed a valid and enforceable agreement between BCBS and Plaintiff Cawthon and the Medicare Advantage Class members.

148.     Plaintiff Cawthon and the Medicare Advantage Class members have the right to receive insurance benefits owed according to their contract with BCBS.

149.     BCBS breached its respective contracts with Plaintiff Cawthon and the Medicare Advantage Class members by failing to provide the full extent of insurance benefits owed to Plaintiff Cawthon and the Medicare Advantage Class members, as PBRT was medically necessary and found to be so after BCBS' delay in approval of the PBRT treatment.

150.     BCBS' breaches are material.

151.     BCBS' breaches have damaged Plaintiff Cawthon and the Medicare Advantage Class members, who have a right to receive benefits.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs on behalf of themselves and the Classes they represent, demand judgment in their favor and against Defendant BCBS as follows:

A.     Certifying the Class, as set forth in this Class Action Complaint, and appointing Plaintiffs as Class Representatives and undersigned counsel as Class Counsel;

B.     Declaring that BCBS must disgorge, for the benefit of Plaintiffs and the Class members all or part of the ill-gotten gains it received from the standard policy of denying and delaying approval for PBRT treatment or make full restitution to Plaintiffs and Class members;

C.     Declaring that BCBS violated the ERISA Plans of Plaintiff Simpkins and the other members of the ERISA Class, and that BCBS violated its fiduciary duties under ERISA, and awarding appropriate equitable relief including disgorgement and surcharges;

11X4871

D.      Declaring that BCBS violated the Medicare Advantage members contracts with Plaintiff Cawthon and the members of the Medicare Advantage Class, and awarding appropriate equitable relief including compensatory, and punitive remedies and damages, and/or disgorgement and surcharges;

E.      Ordering BCBS to create a common fund out of which it will make payment, with interest, of any unpaid benefits to Plaintiffs and PBRT Class members;

F.      Enjoining BCBS from applying its BCBS PBRT Policy to initially deny and delay treatment for all PBRT claims;

G.      Awarding Plaintiffs disbursements and expenses of this action, including reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(0(1), in amounts to be determined by the Court; and

H.      Granting such other and further relief as is just and proper.

DATED:  January 16, 2020.

29

11X4871

Respectfully submitted,

KOZYAK TROPIN & THROCKMORTON, LLP
Counsel for Plaintiffs and Classes
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
Facsimile: (305) 372-3508

By: ____*/s/ Maria D. Garcia*_____
          Harley S. Tropin
          Florida Bar No. 241253
          Email: hst@kttlaw.com
          Maria D. Garcia
          Florida Bar No. 58635
          Email: mgarcia@kttlaw.com
          Robert Neary
          Florida Bar No. 81712
          Email: rn@kttlaw.com
          Frank A. Florio
          Florida Bar No. 1010461
          Email: fflorio@kttlaw.com

          and

COLSON HICKS EIDSON, P.A.
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
E-mail: eservice@colson.com

By: *s/ Stephanie A. Casey*_____
          Dean C. Colson, Esq.
          Florida Bar No. 228702
          Email: dean@colson.com
          Stephanie A. Casey, Esq.
          Florida Bar No. 97483
          Email: scasey@colson.com

30

11X4871